UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHELLE WEAVER, | ) | CASE NUMBER: 1:22-CV-00070 |
| | ) | |
| *On behalf of herself and all others* | ) | JUDGE TIMOTHY S. BLACK |
| *similarly situated,* | ) | |
| | ) | MAGISTRATE JUDGE |
| Plaintiff, | ) | STEPHANIE K. BOWMAN |
| | ) | |
| *v.* | ) | **JOINT MOTION FOR** |
| | ) | **APPROVAL OF SETTLEMENT** |
| BROWN COUNTY SENIOR | ) | |
| CITIZENS COUNCIL, | ) | |
| | ) | |
| Defendant. | ) | |

The parties respectfully and jointly move the Court to approve the proposed Settlement reached by the parties and memorialized in the *Joint Stipulation of Settlement and Release* ("Settlement") attached as Exhibit 1. The Settlement seeks to resolve all individual and collective wage-and-hour claims that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and Opt-Ins representing all of the potential value of their FLSA claims. The parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

Exhibit 1:   *Joint Stipulation of Settlement and Release*;

Exhibit 2:   Proposed Final Order and Judgment Approving Settlement
             and Dismissing Action;

Exhibit 3:   Exhibit A to *Joint Stipulation of Settlement and Release* –
             Individual Payments Allocation Schedule; and

Exhibit 4:   Declaration of Plaintiffs' Counsel.

The below Memorandum in Support explains the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

     Respectfully submitted,

*s/ Kevin M. McDermott II*
Joseph F. Scott (0029780) (Trial Attorney)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs*

*/s Bruce S. Wallace (via email consent)*
Bruce S. Wallace (0010876) (Trial Attorney)
**WALLACE LAW FIRM LLC**
108 S. High St., P.O. Box 467
Mt. Orab, Ohio 45154
Telephone: (937) 444-2563
Facsimile: (937) 444-6154
ucbruce@aol.com

*Counsel for Defendant*

## MEMORANDUM IN SUPPORT

**I.    THE LITIGATION**

   **A.  The Claims and Issues**

Named Plaintiff Michelle Weaver filed this Action in the United States District Court for the Southern District of Ohio, Western Division, on February 8, 2022. (ECF #1.) Plaintiff's Complaint alleged, among other things, that Defendant Brown County Senior Citizens Council failed to pay her and other similarly situated home care employees and other employees who performed related services of Defendant overtime compensation allegedly required to be paid under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and the wage laws of the State of Ohio, O.R.C. §§ 4111.01 *et seq.* (*Id.*)

Defendant Brown County Senior Citizens Council (hereinafter, "BCSCC ") is a residential and home health agency which employs home care aides, who in turn provide home care services including personal care and supported living services to BCSCC's clients. Plaintiff Michelle Weaver was employed by BCSCC from approximately April 2014 to January 2022 as a home health aide (or assisted living aide). Plaintiff alleged that Plaintiff and other home care workers worked overtime hours during one or more workweeks, but that Defendant failed to pay for all overtime hours worked at time and one-half during weeks in which Plaintiffs worked forty (40) or more hours, in violation of the FLSA, 29 U.S.C. § 207; 29 C.F.R. § 778 *et seq*.; that Defendant paid straight time for overtime hours worked, or less than 1.5x the regular rate when calculating and paying overtime during weeks in which Plaintiffs worked as home health aides; and that Defendant therefore paid less than 1.5x the regular rate for all overtime hours suffered or permitted to work in violation of state and federal wage laws. 29 U.S.C. § 207(a)(1); O.R.C. § 4111.03; 29 C.F.R. § 778.107.

3

In its Answer, Defendant denied Plaintiff's claims, and asserted affirmative defenses. (*See* ECF #8.) To obtain the alleged unpaid wages at trial, Plaintiffs would need to: (1) convince the Court that the FLSA claim should proceed to trial on a collective basis under 29 U.S.C. § 216(b); (2) prove that each Named and Opt-In collective action Plaintiff performed overtime hours each workweek not subject to an exemption; and (3) defeat Defendant's legal argument that any alleged violation was not willful and/or made in good faith.

### B. Conditional Class Certification

Plaintiff filed her Motion for Conditional Certification, Opt-In Identification Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) on May 25, 2021. (ECF ##12, 15 (the "Motion for Conditional Certification"); *see* ECF ##12-1 to 12-7, 15-1 to 15-7.) Defendant did not file an opposition. On July 25, 2022, the Court issued its opinion and order granting Plaintiff's Motion for Conditional Certification in substance. (ECF #16; 2022 U.S. Dist. LEXIS 131061, at *8-9.) Notice was mailed and emailed to putative class members, and the opt-in period ended sixty (60) days after the date the Notice and Opt-In Consent Form were mailed. Those putative class members who opted in to Case No. 1:22-CV-00070 – specifically Jennifer Stephens (who was employed by BCSCC from about January 2015 until approximately September 2021 as a home health aide (or assisted living aide)), and Rebecca L. Hurley (who was employed by BCSCC from approximately July 2014 to approximately November 2021 as a home health aide (or assisted living aide)) – were joined as Opt-In Plaintiffs. (*See* ECF ##11-1, 4-1, respectively.)

### C. Discovery and Document Analysis

The parties engaged in extensive discovery, and Defendant ultimately produced voluminous data and documents necessary to fully and fairly evaluate the claims of the Named

Plaintiff and Opt-Ins. On September 16, 2022, Plaintiff served Plaintiff's Omnibus First Set of Discovery Requests to Defendant BCSCC requesting, among other things, all records pertaining or related to employee handbooks; human resources policies, manuals, or memos; timesheets and other timekeeping records; any review, editing, or other modification of hours, timekeeping, or other wage and hour records; and all other records for Plaintiff and each member of the FLSA Collective relating or pertaining to the activities, duties and tasks of these workers, including, but not limited to, any records generated by scheduling, tracking, logging, timing, clocking, measuring, recording, or monitoring the time worked by Plaintiffs. Defendant ultimately produced voluminous compensation and timekeeping data and documents in addition to PDF and Microsoft Excel versions of data compilation spreadsheets where available.

That said, Defendant provided handwritten PDF timekeeping data which displayed straight time hours paid on a twice-monthly pay basis. Importantly, to properly calculate damages, one must have data on the actual workweek the remuneration is earned. Plaintiffs were therefore required to manually recreate time worked in the form of a computation that considers work on a 7-day basis; that is, Plaintiffs' counsel manually created spreadsheets of time worked from the daily timekeeping records to determine the number of overtime hours worked during each 7-day workweek. Notably, none of the dispositive time records – analysis of which was necessary to calculate back-pay owed – were produced in Microsoft Excel or another file format that could be exported to a spreadsheet, and Plaintiffs' Counsel therefore manually and electronically created spreadsheets from the records produced by Defendant to analyze potential damages. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The

discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.     THE NEGOTIATIONS

As noted above, prior to engaging in settlement negotiations, Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Following Plaintiffs' Counsel's analysis of the produced wage and hour data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiff and Opt-Ins, on January 10, 2023 (*see* Honorable Magistrate Judge Stephanie K. Bowman's Order Setting Settlement Conference (ECF #19)), Plaintiffs served Plaintiffs' itemization of damages and settlement demand in the global calculated amount of $164,744.58, which specifically included calculated overtime back wages in the exact amount of $49,000.31, liquidated damages in an equal amount (for a total of $98,000.63 in overtime compensation damages); a $7,500 service award for the Named Plaintiff; and lodestar attorneys' fees and costs in the amount of $59,243.95.

On January 24, 2023, Defendant served Defendant's offer accepting Plaintiff's January 10, 2023 aggregate demand of $164,744.58. However, Defendant noted that it still intended to proceed to mediation to discuss timeline for payment. The parties therefore engaged in the scheduled mediation before Magistrate Judge Stephanie K. Judge Bowman on February 7, 2023. This mediation was unsuccessful, as the parties were still at an impasse at the end of the mediation due to settlement funding timeline issues that the parties discussed at length during the mediation, and a second mediation was scheduled. (*See* Feb. 7, 2023 NOTICE [non-document], MINUTES [non-document].) On March 2, 2023, Defendant clarified that it was now able to pay the settlement amounts previously agreed to at the time of the execution of the settlement

documents. Therefore, upon the parties informing the chambers of Honorable Magistrate Judge Bowman of the resolution of the matter, the rescheduled mediation was cancelled. (*See* March 3, 2023 NOTICE TERMINATING Settlement Conference [non-document].)

As noted above, the attorneys' fees to Plaintiffs' Counsel were demanded, and ultimately agreed to by Defendant, in a separate amount from the payments to be made by Defendant to Name Plaintiff and Opt-Ins as recovery of back overtime wages and liquidated damages, as well as the service award. The parties' negotiations ultimately resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Ex. 4.) Formal settlement documents, including the *Joint Stipulation of Settlement and Release* attached as Exhibit 1, were later prepared and executed for approval by the Court.

## III.   THE SETTLEMENT TERMS

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Named Plaintiff and Opt-Ins – set forth in the Individual Payments Allocation Schedule (Ex. 3) – are based on the exact damages for Plaintiffs based on a comprehensive review and computation of all available timekeeping, payroll, and other wage and hour records/documents. The settlement achieves an exceptional result for the three (3) covered workers, and results in settlement payments equating to 200% of the potential damages owed – after attorneys' fees and a service award to the Named Plaintiff – 100% of the unpaid overtime wages, and 100% of the liquidated damages recoverable pursuant to the FLSA, 29 U.S.C. § 216(b).

**Total Settlement Amount.** Defendant has agreed to pay the total settlement amount of $164,744.58 as set forth in the Settlement Agreement. (Ex. 1 ¶ 13.) That sum will be used to make settlement payments to Named Plaintiff and Opt-In Plaintiffs which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by the Named Plaintiff and Opt-In Plaintiffs; (2) attorneys' fees and reimbursed litigation expenses; (3) service award to Plaintiff Michelle Weaver; and (4) any other obligations of Defendant under the Settlement Agreement.

**Payments to Plaintiffs.** From the total settlement amount, the total amount of $98,000.64 will be paid to the Plaintiffs in consideration for release of claims as provided in the Settlement Agreement. If approved by the Court, as above, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-In Plaintiffs representing a substantial percentage – that is, 200% – of the potential value of their claims, and achieves an excellent result for the covered individuals. Inherent in the proposed distribution method in which Named Plaintiff and Opt-Ins are distributed settlement payments based on each participating employees' actual unpaid overtime compensation damages, the settlement proposal treats participating employees equitably relative to each other. Named Plaintiff Michelle Weaver will participate in the recovery under the same procedure applicable to the other Plaintiffs.

**Service Award.** In addition, Named Plaintiff Michelle Weaver will receive a service award of $7,500.00 in recognition of her service to Plaintiffs' Counsel and her contributions to achieving this Settlement. The proposed service award was well-earned. Among other things, Plaintiff Michelle Weaver consulted with Plaintiffs' Counsel at critical stages; prepared a declaration in support of conditional certification (*see* ECF #15-1); helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and

members of the FLSA collective; attended the February 7, 2023 mediation; and provided other important documents and information throughout the course of the litigation. Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Plaintiff Michelle Weaver's efforts have resulted in a significant recovery for the other Opt-Ins.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $59,243.94. After reductions for costs and litigation expenses in the total amount of $428.95, the attorney fee recovery will equal $58,814.99. (Ex. 1 ¶ 14; *see, e.g.,* Ex. 4, Decl. of R. Winters ¶ 35.)

**Importantly, the attorneys' fees to Plaintiffs' Counsel were demanded and negotiated separately from the payments made by Defendant to Named Plaintiff and Opt-Ins.** The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*See generally id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Named Plaintiff and Opt-In Plaintiffs. (*See* Ex. 1, Settlement Agreement ¶¶ 13, 14, 16.) As further explained in Section IV, D of this brief below, the payment to counsel is reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## IV. THE PROPRIETY OF APPROVAL

Pursuant to the FLSA, claims for back wages and other damages may be settled or compromised only with the approval of the district court or the Secretary of Labor. *See, e.g., Lewis v. Huntington Natl. Bank,* 789 F.Supp.2d 863, 869 (S.D.Ohio 2011) (citing *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United*

*States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982)). To approve the settlement, the Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *See Bailey v. W.D. Wright Contracting, Inc*., No. 1:20-cv-12, 2021 U.S. Dist. LEXIS 44355, at *3-4 (S.D. Ohio Mar. 10, 2021); *Yorba v. Barrington School, LLC*, S.D.Ohio No. 2:21-cv-691, 2022 U.S. Dist. LEXIS 118230, at *7 (July 5, 2022) (citing *Landsberg v. Acton Ents., Inc*., 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008), quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8, 90 L. Ed. 1114 (1946)); *Zego v. Meridian-Henderson*, S.D.Ohio No. 2:15-CV-3098, 2016 U.S. Dist. LEXIS 132320, at *3 (Sep. 27, 2016) (quoting *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012)).

## A.  The Six-Factor Standard is Satisfied

In *Bailey*, this Court used six factors to evaluate whether the proposed settlement was fair and reasonable for purposes of an FLSA settlement, 29 U.S.C. § 216(b). *Bailey*, 2021 U.S. Dist. LEXIS 44355, at *3-4; *Smith v. TradeGlobal, LLC*, No. 1:19-cv-192, 2020 U.S. Dist. LEXIS 179622, at *3 (S.D. Ohio Sep. 29, 2020); *see also Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7-12; *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20; *see also Crawford v. Lexington-Fayette Urban Cty. Govt.,* E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)). These factors include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of counsel and representatives; and (6) public interest in the settlement.

*Bailey,* 2021 U.S. Dist. LEXIS 44355, at *3-4. *See also Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7-12 (citing *UAW*, 497 F.3d at 631). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Bailey*, *2021 U.S. Dist. LEXIS 44355*, at *4 (citing *Gentrup v. Renovo Servs., LLC,* S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *8 (June 24, 2011)); *see also Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 at *11 (N.D. Ohio Aug. 23, 2008) (citing *Granada,* 962 F.2d at 1205-06).

Here, a key factor – the likelihood of success on the merits balanced against the amount and form of the settlement in light of the substantial risks of litigation – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant denies, but also each Plaintiffs' damages. At trial, Defendant will argue that it acted in good faith, which could result in an adverse ruling for Plaintiffs as to willfulness. Nevertheless, the Settlement assures that the Plaintiffs will receive significant compensation – the settlement payments equate to 200% of the potential damages owed – *after attorneys' fees and service award to the Named Plaintiff* – 100% of the unpaid overtime wages, and 100% of liquidated damages recoverable pursuant to the FLSA, 29 U.S.C. § 216(b). Given the exceptional recovery in this case, the certainty and finality of a settlement that will substantially benefit the Named Plaintiff and Opt-Ins is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24-25 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668,

679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments – 200% of the available overtime back wage damages – available to the Named Plaintiff and Opt-Ins to this action.

The other factors are satisfied as well. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is categorically no fraud or collusion – the settlement was achieved only after good faith and arm's-length negotiations between parties represented by competent counsel, including an initially attempted but unsuccessful mediation before Magistrate Judge Stephanie K. Bowman. *See Sharier v. Top of the Viaduct, LLC,* N.D.Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *5 (Mar. 13, 2017); *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *8.

The parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood. Plaintiffs' Counsel both manually and electronically transcribed thousands of wage and hour records – the necessary payroll and timekeeping information for the required damages analysis – into an electronic format to extensively assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

Moreover, wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The Settlement assures that the Plaintiffs will receive significant compensation. Counsel on both sides support the Settlement, as does the Named Plaintiff herself. (*See* Exs. 1, 4.) In sum, the six-factor standard is satisfied, supporting that the settlement is "a fair and reasonable resolution of a bona fide dispute." *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7.

### B.  The Settlement Payments are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *25 (citing *Rotuna v. W. Customer Mgt. Group, LLC,* N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *6 (June 15, 2010), citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Named Plaintiff and Opt-Ins, which are listed in the Individual Payments Allocation Schedule (Ex. 3), represent 200% of the potential damages owed – *after* attorneys' fees and service award to the Named Plaintiff are deducted – or 100% of the calculated unpaid overtime wages, and 100% of liquidated damages recoverable pursuant to the FLSA, 29 U.S.C. § 216(b), and the ***allocations are based on the actual damages*** of the Plaintiffs. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the damages methodology that Named Plaintiff and Opt-Ins will present at trial.

The settlement achieves an exceptional result for the covered workers, and results in an average payout of $32,666.88 per worker, again, 200% of the damages for each Plaintiff after attorneys' fees, costs, and the service award. *See Yorba*, 2022 U.S. Dist. LEXIS 118230, at *14 (citing *see Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 19-2260, 833 Fed. Appx. 430, 2021 U.S. App. LEXIS 983, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class); citing *see also Donnell Smith, et al. v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (approving FLSA settlement providing payments of approximately 115% of plaintiffs' possible damages and noting the amount "greatly exceeds the typical 7-11% recovery in FLSA cases.")).

As noted above, individual payments will be calculated based on the exact amounts of the overtime back wages Plaintiffs are allegedly owed by Defendant. There is no doubt that the payments to Plaintiffs are an exceptional recovery, and meet the criteria for approval pursuant to the FLSA, § 216(b), and Sixth Circuit Authority.

### C. The Service Award to the Named Plaintiff is Proper and Reasonable

A reasonable service award properly recognizes the representative Plaintiff's services on behalf of other beneficiaries of the settlement and her contribution to achieving a positive outcome. *See In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990). Another court in this district recently noted that such awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *14 (citing *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019), quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

In this Circuit, reasonable service awards are

[J]ustified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives.

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997) (citations omitted). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010); *Osman v. Grube, Inc.,*

N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *5-6 (May 4, 2018) (approving $7,500 service award to named plaintiff); *Myres v. Hopebridge, LLC*, No. 2:20-cv-5390, 2023 U.S. Dist. LEXIS 41294, at *14-15 (S.D. Ohio Feb. 21, 2023) (approving $7,500 service award); *Headspeth v. TPUSA, Inc.,* No. 2:19-cv-2062, 2022 U.S. Dist. LEXIS 161866, at *4-5 (S.D. Ohio Sep. 7, 2022) (approving $7,500 service award); *Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at *4 (Nov. 18, 2019) (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26-27 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff) (citing *Whittington v. Taco Bell of Am., Inc*., D.Colo. Civil Action No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665, at *24 (Nov. 13, 2013) (approving service payment for the named plaintiff of $7,500).

Indeed, the Named Plaintiff Michelle Weaver here incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff Michelle Weaver consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and members of the FLSA collective; attended the mediation; and provided and reviewed other important documents and information throughout the course of the litigation. Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Furthermore, Plaintiff Michelle Weaver proactively and faithfully represented the interests of all Opt-Ins and ably assisted Plaintiffs' Counsel in this matter. Her contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $7,500.00 is reasonable and well-earned. Defendant has no objection to this award.

### D. Plaintiffs' Counsels' Fees and Expenses are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)).

The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6, 1985 WL 13108, at * 2 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 (May 30, 2012) (the fee award must be "adequate to attract competent counsel but … not produce a windfall") (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). In the Sixth Circuit, "[i]n determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the

lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id*. (quoting *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004)).

Recently, in *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-617 (6th Cir.2021), the Sixth Circuit addressed a situation where the court "capped the awardable fees at some percentage of [the plaintiff's claims'] monetary value." The Court ultimately ordered attorney fees to be calculated based on the lodestar attorneys' fees incurred, noting:

> "Neither the text nor the purpose" of the FLSA "supports imposing a proportionality limit on recoverable attorneys' fees." The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them.

*Id.* at 616-617 (quoting *Fisher v. SD Protection Inc*., 948 F.3d 593, 603 (2d Cir. 2020); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004)). Moreover, "[i]n determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Monroe v. FTS USA, LLC,* 17 F.4th 664, 672-73 (6th Cir. 2021) (quoting *Rembert*, 986 F.3d at 618, quoting *Carter v. Hickory Healthcare, Inc*., 905 F.3d 963, 970 (6th Cir. 2018)). *See also Smyers v. Ohio Mulch Supply Inc*., 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App. LEXIS 19634, at *5-6 (July 1, 2021) (district court abused its discretion by reducing the parties' agreed-to fees payment calculated under the lodestar method to one-third of the total settlement amount).

Here, the proposed payment to Plaintiffs' Counsel – again, separately demanded and negotiated from the payments to Named Plaintiff and Opt-Ins – represents a reduction from the total fees and costs expended in the prosecution of the Action. The efforts of Plaintiffs' Counsel

resulted in proposed settlement payments to the Named Plaintiff and Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims - 200% of the wage damages calculated for the participating Named Plaintiff and Opt-In Plaintiffs. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 4.

The activities and efforts of Plaintiffs' Counsel – which ultimately resulted in an exceptional recovery to Plaintiffs – in this matter were significant. Prosecuting complex litigation on a collective class basis is always difficult and time-consuming. The tasks required of Plaintiffs' Counsel in this case included pre-litigation investigation of Plaintiff's claims and the identities of potential defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as investigation and interviewing of current and former home health aides of Defendant and putative opt-in class members. Plaintiff filed her Motion for Conditional Certification on May 25, 2021. (ECF ##12, 15; *see* ECF ##12-1 to 12-7, 15-1 to 15-7.) While Defendant did not ultimately oppose the motion, Plaintiffs' Counsel was required to spend significant attorney time drafting the motion, related exhibit declarations from each of the Named and Opt-In Plaintiffs, and notice and proposed order documents. On July 25, 2022, the Court issued its opinion and order granting Plaintiff's Motion for Conditional Certification in substance. (ECF #16; 2022 U.S. Dist. LEXIS 131061, at *8-9), and notice was subsequently mailed, emailed, and administrated by Plaintiffs' Counsel. Plaintiffs' Counsel oversaw the notice mailings to potential opt-in plaintiffs, and responded to questions and inquiries from potential opt-in members.

Plaintiffs' Counsel drafted and issued Plaintiff's Omnibus First Set of Discovery Requests to Defendant. As noted above, Defendant provided handwritten PDF timekeeping data

which displayed straight time hours paid on a twice-monthly pay basis. Importantly, to properly calculate damages, one must have data on the actual workweek the remuneration is earned. Plaintiffs were therefore required to manually recreate time worked in the form of a computation that considers work on a 7-day basis; that is, Plaintiffs' counsel manually created spreadsheets of time worked from the daily timekeeping records to determine the number of overtime hours worked during each 7-day workweek. Notably, none of the dispositive time records – analysis of which was necessary to calculate back-pay owed – were produced in Microsoft Excel or another file format that could be exported to a spreadsheet, and Plaintiffs' Counsel therefore manually and electronically created spreadsheets from the records produced by Defendant to analyze potential damages. These documents and data were extensively analyzed by Plaintiffs' Counsel for damages, settlement evaluation and mediation purposes. The analyses, investigation and discovery were time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named Plaintiff and Opt-In Plaintiffs – 200% of their calculated wage damages as outlined above – again, after all fees, costs, and service award to the Named Plaintiff are deducted. As of May 9, 2023, at a combined fee lodestar of $62,595.00, the requested attorney fee results in a "negative multiplier" of 0.94 ($58,814.99 attorney fee award / $62,595.00 lodestar fee), if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 ¶¶ 47, 51.) Such a negative multiplier supports that the fee sought is reasonable. *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019); *Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-

DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)). In other words, Named Plaintiff and Opt-In Plaintiffs will recover approximately 200% of their calculated wage damages, and Plaintiffs' Counsel will recover approximately 94% of their lodestar attorney fees incurred as of May 9, 2023. Moreover, Plaintiff's Counsel's lodestar has not been adjusted to account for the time Plaintiff's Counsel spent after May 9, 2023 finalizing this motion for approval and final negotiations of the Settlement Agreement, as well as additional time counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, responding to questions and inquiries from the collective action members, and continuing representation of Plaintiffs through the conclusion of this matter and disbursement of settlement proceeds. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

In addition, the Settlement provides for $428.95 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (Ex. 1 ¶ 14; *see* Ex. 4 ¶ 53.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.     CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully submitted,

s/ Kevin M. McDermott II
Joseph F. Scott (0029780) (Trial Attorney)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs*

/s Bruce S. Wallace (via email consent)
Bruce S. Wallace (0010876) (Trial Attorney)
**WALLACE LAW FIRM LLC**
108 S. High St., P.O. Box 467
Mt. Orab, Ohio 45154
Telephone: (937) 444-2563
Facsimile: (937) 444-6154
ucbruce@aol.com

*Counsel for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*s/ Kevin M. McDermott II*
Kevin M. McDermott II (0090455)
